# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-03756-NYW-CYC

Aircomm of Avon, LLC; Atlantic Coast Communications LLC; CCATT LLC; CCTMO LLC; CCTM1 LLC; CCTM2 LLC; Coverage Plus Antenna Systems LLC; Crown Atlantic Company LLC; Crown Castle Fiber LLC; Crown Castle GT Company LLC; Crown Castle MU LLC; Crown Castle South LLC; Crown Castle Towers 05 LLC; Crown Castle Towers 06-2 LLC; Crown Castle Towers 09 LLC; Crown Communications LLC; Global Signal Acquisitions LLC; Global Signal Acquisitions II LLC; Global Signal Acquisitions III LLC; Global Signal Acquisitions IV LLC; GoldenState Towers, LLC; High Point Management Co. LLC; ICB Towers, LLC; Interstate Tower Communications LLC; IntraCoastal City Towers LLC; Pinnacle Towers Acquisition LLC; Pinnacle Towers Asset Holding LLC; Pinnacle Towers LLC; Pinnacle Towers III LLC; Radio Station WGLD LLC; Shaffer & Associates, Inc.; Sierra Towers, Inc.; Tower Development Corporation; Tower Systems LLC; Tower Technology Company of Jacksonville LLC; Tower Ventures III, LLC; WCP Wireless Lease Subsidiary, LLC; and TVHT, LLC,

         Plaintiffs,

v.

DISH Wireless L.L.C.,

         Defendant.

---

## DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT

---

Defendant DISH Wireless L.L.C. ("Defendant"), by and through its undersigned attorneys, submits this Answer ("Answer") to the Complaint for Declaratory Judgment, ECF No. 1 ("Complaint") filed by Plaintiffs Aircomm of Avon, LLC; Atlantic Coast Communications LLC; CCATT LLC; CCTMO LLC; CCTM1 LLC; CCTM2 LLC; Coverage Plus Antenna Systems LLC; Crown Atlantic Company LLC; Crown Castle Fiber LLC; Crown Castle GT Company LLC; Crown Castle MU LLC; Crown Castle South LLC; Crown Castle Towers 05 LLC; Crown Castle Towers 06-2 LLC; Crown Castle Towers 09 LLC; Crown Communications LLC; Global Signal

1

Acquisitions LLC; Global Signal Acquisitions II LLC; Global Signal Acquisitions III LLC; Global Signal Acquisitions IV LLC; GoldenState Towers, LLC; High Point Management Co. LLC; ICB Towers, LLC; Interstate Tower Communications LLC; IntraCoastal City Towers LLC; Pinnacle Towers Acquisition LLC; Pinnacle Towers Asset Holding LLC; Pinnacle Towers LLC; Pinnacle Towers III LLC; Radio Station WGLD LLC; Shaffer & Associates, Inc.; Sierra Towers, Inc.; Tower Development Corporation; Tower Systems LLC; Tower Technology Company of Jacksonville LLC; Tower Ventures III, LLC; WCP Wireless Lease Subsidiary, LLC; and TVHT, LLC, (collectively, "Plaintiffs" or "Crown Castle"). Unless otherwise stated, capitalized terms herein have the same meaning as in the Complaint. To the extent Defendant uses terms in this Answer defined in the Complaint, that use is not an acknowledgment or admission of any characterization Plaintiffs may have ascribed to such defined terms.

No response is required to the various headings, subheadings and footnotes throughout the Complaint. To the extent that responses are required to such headings, subheadings and footnotes, they are denied. To the extent that any allegation is not specifically admitted, it is denied.

To avoid any doubt, Defendant denies each and every allegation in the Complaint except as specifically admitted herein. Throughout the Complaint, Plaintiffs have cited press releases, public statements, and public filings as purported evidentiary support for their factual allegations. In referring to these documents in response to specific allegations, Defendant does not concede that Plaintiffs have accurately described the documents or admit to the accuracy of any statements contained in those documents.

Defendant reserves the right to challenge the relevance and admissibility of the allegations and all sources and documents referred to or purportedly quoted in the Complaint. Defendant further reserves the right to amend and/or supplement this Answer.

Subject to the foregoing, as and for their answer to the Complaint, Defendant answers as follows:

## <u>INTRODUCTION</u>

1    Defendant denies the allegations in Paragraph 1, except admits that: (i) in July 2020, DISH Network Corporation acquired certain assets and liabilities associated with Boost Mobile from T-Mobile US, Inc., following T-Mobile US, Inc.'s merger with Sprint Corporation; (ii) Boost Mobile is a wireless carrier that offers prepaid and postpaid mobile phone plans; (iii) Defendant is a subsidiary of EchoStar Corporation focused on a 5G mobile network; and (iv) Defendant and Crown Castle (except for Crown Castle Fiber LLC) entered into the MLA, attached to the Complaint as Exhibit A, and Defendant and Crown Castle Fiber LLC entered into the MPA, attached to the Complaint as Exhibit B, and Defendant refers to those agreements for their full contents.

2    Defendant denies the allegations in Paragraph 2, except admits that: (i) EchoStar Corporation is Defendant's ultimate parent company; (ii) as a result of the FCC's unprecedented and unforeseeable actions, EchoStar Corporation and certain of EchoStar Corporation's subsidiaries that own the spectrum licenses at issue (which do not include Defendant) (collectively, "EchoStar") were forced to negotiate the sale of certain spectrum licenses to AT&T, which sale was announced on August 26, 2025 (the "AT&T Transaction"), and the sale of certain spectrum licenses and MSS Authorizations to SpaceX, which sales were announced on September 8, 2025

3

and November 6, 2025 (collectively the "SpaceX Transaction", and together with the AT&T

Transaction, the "Transactions"); (iii) the FCC's unprecedented and unforeseeable actions were

unrelated to any of EchoStar's or Defendant's obligations to the FCC; and (iv) the Transactions

are subject to certain closing conditions, including regulatory approval. Defendant further admits

that Defendant and Crown Castle (except for Castle Fiber LLC) entered into the MLA, attached to

the Complaint as Exhibit A, and Defendant and Crown Castle Fiber LLC entered into the MPA,

attached to the Complaint as Exhibit B, and Defendant refers to those agreements for their full

contents, but denies any characterization thereof that is inconsistent with those documents.

   3  Defendant denies the allegations in Paragraph 3, except admits that: (i) since at least

2019, DISH Network Corporation had planned, through Defendant and certain of its subsidiaries,

to deploy a nationwide, first-of-its-kind cloud-native Open Radio Active Network-based 5G

network utilizing certain wireless spectrum which in turn required governmental licenses; and (ii)

to transmit signals on its wireless network, Defendant required wireless tower space to host

equipment and fiber transport services.

   4  Defendant denies the allegations in Paragraph 4, except admits that: (i) since 2008,

EchoStar[1] acquired a portfolio of spectrum licenses, invested over $30 billion in spectrum licenses

and related assets, and made public commitments to the FCC regarding network buildout; (ii) in

July 2020, DISH Network Corporation acquired certain assets and liabilities associated with Boost

Mobile from T-Mobile US, Inc., following T-Mobile US, Inc.'s merger with Sprint Corporation,

and that Boost Mobile is a wireless carrier that offers prepaid and postpaid mobile phone plans;

---

1 Unless otherwise stated herein, all references to EchoStar in this Answer shall have the
meaning ascribed to such term in Defendant's answer to the allegations in paragraph 2.

(iii) on August 8, 2023, DISH Network Corporation announced a merger transaction with EchoStar Corporation, and that the merger closed on December 31, 2023; and (iv) Defendant leased space for telecommunications equipment and purchased fiber services, among other things, pursuant to certain written agreements, including with Crown Castle, and refers to those written agreements for their full contents, but denies any characterization thereof that is inconsistent with those documents.

5       Defendant denies the allegations in Paragraph 5, except admits that on November █, 2020, Defendant and Crown Castle entered into the MLA, and on December █, 2020, Defendant and Crown Castle entered into the MPA, and Defendant refers to those Agreements for their full contents, but denies any characterization thereof that is inconsistent with those documents.

6       Defendant denies the allegations in Paragraph 6, except admits that: (i) in July 2020, DISH Network Corporation acquired certain assets and liabilities associated with Boost Mobile from T-Mobile US, Inc., following T-Mobile US, Inc.'s merger with Sprint Corporation, and Boost Mobile is a wireless carrier that offers prepaid and postpaid mobile phone plans; and (ii) Boost Mobile presently has transitioned to a hybrid mobile network operator ("MNO") business model under which primary connectivity is provided by network capacity from wireless providers other than Defendant.   Defendant further states that: (i) EchoStar was forced to enter into the Transactions and to pursue a hybrid MNO business model as a result of the unforeseen and unprecedented actions by the FCC, which communicated its intent to revoke the relevant licenses and authorizations related to EchoStar's spectrum if EchoStar did not divest such spectrum; (ii) the Transactions are subject to certain closing conditions, including regulatory approval; (iii)

EchoStar Corporation is not a party to the Agreements; and (iv) Defendant is not a party to the Transactions, does not own and never owned the spectrum licenses at issue, and is not entitled to receive any of the spectrum sale proceeds at closing.

7        Defendant denies the allegations in Paragraph 7, except admits that: (i) EchoStar was forced to enter into the Transactions as a result of the unforeseen and unprecedented actions by the FCC, which communicated its intent to revoke the relevant licenses and authorizations related to EchoStar's spectrum if such spectrum was not divested by EchoStar; (ii) on May 9, 2025, FCC Chairman Brendan Carr wrote to EchoStar Corporation's Chairman, Charles Ergen; and (iii) on June 6, 2025, EchoStar Corporation filed reply comments in FCC Dockets Nos. 25-173 and 22-212, and Defendant refers to those public filings for their full contents, but denies any characterization thereof that is inconsistent with those documents.

8        Defendant denies the allegations in Paragraph 8, except admits that: (i) on September 24, 2025, Defendant sent a notice to Crown Castle under the MLA, attached to the Complaint as Exhibit C; (ii) on September 25, 2025, Defendant sent a notice to Crown Castle under the MPA, attached to the Complaint as Exhibit D; and (iii) on November 10, 2025, Defendant sent a letter to Crown Castle under the MLA, attached to the Complaint as Exhibit H, and Defendant refers to those documents for their full contents, but denies any characterization thereof that is inconsistent with those documents.

9        Paragraph 9 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 9, and further states that EchoStar was forced to enter into the Transactions as a result of the

unforeseen and unprecedented actions by the FCC, which communicated its intent to revoke the relevant licenses and authorizations related to EchoStar's spectrum if EchoStar did not divest them.

10    Paragraph 10 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 10, except admits that Plaintiffs purport to quote and characterize the MLA, and Defendant refers to the MLA for its full contents, but denies any characterization thereof that is inconsistent with that document.

11    Paragraph 11 contains legal arguments or conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 11.

## PARTIES

12    Defendant admits the allegations of the first sentence of Paragraph 12. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 12, and therefore denies them.

13    Defendant admits the allegations of the first sentence of Paragraph 13. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 13, and therefore denies them.

14    Defendant admits the allegations of the first sentence of Paragraph 14. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 14, and therefore denies them.

15    Defendant admits the allegations of the first sentence of Paragraph 15. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 15, and therefore denies them.

16      Defendant admits the allegations of the first sentence of Paragraph 16. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 16, and therefore denies them.

17      Defendant admits the allegations of the first sentence of Paragraph 17. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 17, and therefore denies them.

18      Defendant admits the allegations of the first sentence of Paragraph 18. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 18, and therefore denies them.

19      Defendant admits the allegations of the first sentence of Paragraph 19. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 19, and therefore denies them.

20      Defendant admits the allegations of the first sentence of Paragraph 20.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 20, and therefore denies them.

21      Defendant admits the allegations of the first sentence of Paragraph 21. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 21, and therefore denies them.

22      Defendant admits the allegations of the first sentence of Paragraph 22. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 22, and therefore denies them.

23      Defendant admits the allegations of the first sentence of Paragraph 23. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 23, and therefore denies them.

24      Defendant admits the allegations of the first sentence of Paragraph 24. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 24, and therefore denies them.

25      Defendant admits the allegations of the first sentence of Paragraph 25.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 25, and therefore denies them.

26      Defendant admits the allegations of the first sentence of Paragraph 26.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 26, and therefore denies them.

27      Defendant admits the allegations of the first sentence of Paragraph 27. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 27, and therefore denies them.

28      Defendant admits the allegations of the first sentence of Paragraph 28. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 28, and therefore denies them.

29      Defendant admits the allegations of the first sentence of Paragraph 29.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 29, and therefore denies them.

30      Defendant admits the allegations of the first sentence of Paragraph 30. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 30, and therefore denies them.

31      Defendant admits the allegations of the first sentence of Paragraph 31.   Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 31, and therefore denies them.

32      Defendant admits the allegations of the first sentence of Paragraph 32.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 32, and therefore denies them.

33      Defendant admits the allegations of the first sentence of Paragraph 33. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 33, and therefore denies them.

34      Defendant admits the allegations of the first sentence of Paragraph 34.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 34, and therefore denies them.

35      Defendant admits the allegations of the first sentence of Paragraph 35.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 35, and therefore denies them.

36      Defendant admits the allegations of the first sentence of Paragraph 36.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 36, and therefore denies them..

37      Defendant admits the allegations of the first sentence of Paragraph 37.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 37, and therefore denies them.

38      Defendant admits the allegations of the first sentence of Paragraph 38.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 38, and therefore denies them.

39      Defendant admits the allegations of the first sentence of Paragraph 39.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 39, and therefore denies them.

40      Defendant admits the allegations of the first sentence of Paragraph 40.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 40, and therefore denies them.

41      Defendant admits the allegations of the first sentence of Paragraph 41.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 41, and therefore denies them.

42      Defendant admits the allegations of the first sentence of Paragraph 42.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 42, and therefore denies them.

43      Defendant admits the allegations of the first sentence of Paragraph 43.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 43, and therefore denies them.

44      Defendant admits the allegations of the first sentence of Paragraph 44.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 44, and therefore denies them.

45      Defendant admits the allegations of the first sentence of Paragraph 45.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 45, and therefore denies them.

46      Defendant admits the allegations of the first sentence of Paragraph 46.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 46, and therefore denies them.

47      Defendant admits the allegations of the first sentence of Paragraph 47.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 47, and therefore denies them.

48      Defendant admits the allegations of the first sentence of Paragraph 48.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 48, and therefore denies them.

49      Defendant admits the allegations of the first sentence of Paragraph 49.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 49, and therefore denies them.

50      Admitted.

51      Admitted.

## JURISDICTION AND VENUE

52      Paragraph 52 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant states that it does not contest that this Court has jurisdiction over this action.

53      Paragraph 53 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant states that it does not contest that this Court may exercise personal jurisdiction over Defendant.

54      Paragraph 54 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant states that it does not contest that venue in this Court is proper.

55      Paragraph 55 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant states that it does not contest that this Court may exercise personal jurisdiction over Defendant or that venue in this Court is proper.

## FACTUAL BACKGROUND

## I.    ECHOSTAR ACQUIRES BOOST MOBILE AND ENTERS THE MOBILE WIRELESS BUSINESS IN 2019

56      Defendant denies the allegations in Paragraph 56, except admits that Defendant is a subsidiary of EchoStar Corporation that, prior to the FCC's actions referenced above and EchoStar's entry into the AT&T Transaction, focused on the buildout and operation of a 5G mobile network.

57      Defendant denies the allegations in Paragraph 57, except admits that: (i) since 2008, EchoStar acquired a portfolio of spectrum licenses, invested over $30 billion in spectrum licenses and related assets, and made public commitments to the FCC regarding network buildout; and (ii)

since at least 2019, DISH Network Corporation had planned, through Defendant and certain of its

subsidiaries, to deploy a nationwide, first-of-its-kind cloud-native Open Radio Active Network-

based 5G network.  Defendant further states that Paragraph 57 purports to quote and characterize

a public statement, and Defendant refers to that public statement for its full contents, but denies

any characterization thereof that is inconsistent with that public statement.

       58     Defendant denies the allegations in Paragraph 58, except admits that: (i) on July 26,

2019, DISH Network Corporation publicly announced that it would enter the U.S. wireless market

as the fourth nationwide facilities-based network competitor after reaching agreements with the

Antitrust Division of the U.S. Department of Justice, T-Mobile US, Inc. and Sprint Corporation to

acquire a number of spectrum licenses across several bands, and made public commitments to the

FCC regarding network buildout; and (ii) in July 2020, DISH Network Corporation acquired

certain assets and liabilities associated with Boost Mobile from T-Mobile US, Inc., following T-

Mobile US, Inc.'s merger with Sprint Corporation, and that Boost Mobile is a wireless carrier that

offers prepaid and postpaid mobile phone plans. Defendant further states that Paragraph 58

purports to quote and characterize a public statement, and Defendant refers to that public

statement for its full contents, but denies any characterization thereof that is inconsistent with that

public statement.

       59     Defendant denies the allegations in Paragraph 59, except admits that: (i) in July

2020, DISH Network Corporation acquired certain assets and liabilities associated with Boost

Mobile from T-Mobile US, Inc., following T-Mobile US, Inc.'s merger with Sprint Corporation;

(ii) Boost Mobile is a wireless carrier that offers prepaid and postpaid mobile phone plans; and

(iii) DISH Network Corporation made public commitments to the FCC regarding network buildout.

60     Defendant denies the allegations in Paragraph 60, except admits that: (i) in order to operate a wireless network, Defendant required access to spectrum, (ii) spectrum is regulated in the United States by the FCC, and (iii) companies can obtain licenses to use specific frequencies of spectrum—measured in megahertz (MHz) and gigahertz (GHz)—for exclusive purposes, including to provide mobile wireless and data services.

61     Defendant denies the allegations in Paragraph 61, except admits: (i) EchoStar invested more than $30 billion in spectrum and related asset, including in connection with successful bids for spectrum licenses at various frequencies at FCC-conducted auctions, and (ii) that wireless spectrum assets are regulated by the FCC and are subject to revocation or non-renewal by the FCC.

## II.     CROWN CASTLE AND DISH ENTER INTO THE MLA AND MPA

62     Defendant denies the allegations in Paragraph 62, except admits that EchoStar made various commitments to the FCC, all of which EchoStar has complied with.

63     Defendant denies the allegations in Paragraph 63, except admits that Defendant required access to and leased physical infrastructure to operate its wireless network.

64     Defendant denies the allegations in Paragraph 64, except admits that Plaintiffs purport to quote and characterize a public statement, and Defendant refers to the public statement for its full contents, but denies any characterization thereof that is inconsistent with that public statement.

65      Defendant denies the allegations in Paragraph 65, except (a) admits that: (i) pursuant to the Agreements, Crown Castle leased physical infrastructure to Defendant to operate its wireless network; and (ii) Crown Castle has leased space on certain of its towers to third-party wireless network carriers, and (b) denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that Crown Castle maintains and operates approximately 40,000 cell tower sites across the United States.

**A.  The Master Lease Agreement**

66      Defendant denies the allegations in Paragraph 66, except admits that Defendant and Crown Castle (except for Crown Castle Fiber LLC) entered into the MLA, attached to the Complaint as Exhibit A, and refers to the MLA for its full contents, but denies any characterization thereof that is inconsistent with that document.

67      Defendant denies the allegations of Paragraph 67, except admits that Plaintiffs purport to quote and characterize the public statement referenced in Footnote 9, and Defendant refers to the public statement for its full contents, but denies any characterization thereof that is inconsistent with that public statement.

68      Defendant denies the allegations in Paragraph 68, except admits that █████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Defendant further states that Paragraph 68 purports to characterize the MLA, and Defendant refers to the MLA for its full contents, but denies any characterization that is inconsistent with that document.

69      Defendant denies the allegations in Paragraph 69, except admits that █████████ ████████████████████████████████████████████ Defendant further

16

states that Paragraph 69 purports to characterize the MLA, and Defendant refers to the MLA for its full contents, but denies any characterization that is inconsistent with that document.

70    Paragraph 70 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant admits that ███████████████

████████████████████████████████████████████████████

███████████████

71    Paragraph 71 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 71, except admits that Plaintiffs purport to quote and characterize the MLA, and Defendant refers to the MLA for its full contents, but denies any characterization thereof that is inconsistent with that document.

**B.  The Master Product Agreement**

72    Defendant denies the allegations in Paragraph 72, except admits that on or about December ██, 2020 Defendant and Crown Castle Fiber LLC entered into the MPA, attached to the Complaint as Exhibit B, and Defendant refers to the MPA for its full contents, but denies any characterization that is inconsistent with that document.

73    Defendant denies the allegations in Paragraph 73.  Defendant further states that Paragraph 73 purports to characterize the MPA, and Defendant refers to the MPA for its full contents, but denies any characterization thereof that is inconsistent with that document.

74    Defendant denies the allegations in Paragraph 74, except admits that the MPA requires payments under certain circumstances described therein.  Defendant further states that

Paragraph 74 purports to characterize the MLA, and Defendant refers to the MLA for its full contents, but denies any characterization that is inconsistent with that document.

75      Paragraph 75 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant admits that █████████████████ ████████████████████████████████████████████████████████████████████ ███████████

## III.    ECHOSTAR SELLS CERTAIN OF ITS SPECTRUM LICENSES TO AT&T AND SPACEX FOR BILLIONS OF DOLLARS

76      Defendant denies the allegations in Paragraph 76.  Defendant further states that Paragraph 76 purports to quote and characterize a public filing, and Defendant refers to that public filing for its full contents, but denies any characterization thereof that is inconsistent with that public filing.

77      Defendant denies the allegations in Paragraph 77, except admits that on September 18, 2024, EchoStar Corporation requested from the FCC an extension of certain deadlines, which the FCC granted.

78      Defendant denies the allegations in Paragraph 78, except admits that on May 9, 2025, FCC Chairman Brendan Carr wrote to EchoStar Corporation's Chairman, Charles Ergen. Defendant further states that Paragraph 78 purports to quote and characterize that May 9, 2025 letter, and Defendant refers to that letter for its full contents, but denies any characterization thereof that is inconsistent with that document.

79      Defendant denies the allegations in Paragraph 79.  Defendant further states that Paragraph 79 purports to quote and characterize a public filing, and Defendant refers to that public

filing for its full contents, but denies any characterization thereof that is inconsistent with that public filing.

80     Defendant denies the allegations in paragraph 80, except admits that: (i) the FCC's conduct in requiring EchoStar to divest or forfeit the spectrum at issue was unforeseeable, unprecedented and beyond the control of EchoStar or Defendant; (ii) EchoStar and Defendant took all reasonable efforts to to respond to the FCC's inquiries and retain the spectrum licenses at issue; and (iii) on June 6, 2025, EchoStar Corporation filed reply comments in FCC Dockets Nos. 25-173 and 22-212.  Defendant further states that Paragraph 80 purports to quote and characterize that referenced public filing, and Defendant refers to that public filing for its full contents, but denies any characterization thereof that is inconsistent with that public filing.

81     Defendant denies the allegations in Paragraph 81.  Defendant further states that the FCC's conduct with respect to EchoStar's spectrum was beyond the control of EchoStar or Defendant, and that EchoStar and Defendant took all reasonable efforts to respond to the FCC's inquiries and retain the spectrum licenses at issue.

82     Defendant denies the allegations in Paragraph 82, except admits that: (i) as a result of the FCC's unprecedented and unforeseeable actions, EchoStar was forced to enter into the AT&T Transaction, which was announced on August 26, 2025; and (ii) closing of the AT&T Transaction is expected in 2026, subject to certain conditions, including regulatory approval.

83     Defendant denies the allegations in Paragraph 83, except admits that: (i) as a result of the FCC's unprecedented and unforeseeable actions, EchoStar was forced to enter into the SpaceX Transaction, which was announced on September 8, 2025; and (ii) closing of the SpaceX Transaction is expected in 2027, subject to certain conditions, including regulatory approval.

84      Defendant denies the allegations in Paragraph 84, except admits that: (i) as a result of the FCC's unprecedented and unforeseeable actions, EchoStar was forced to enter into the second SpaceX Transaction, which was announced on November 6, 2025; and (ii) closing of the second SpaceX Transaction is expected in 2027, subject to certain conditions, including regulatory approval.

85      Defendant denies the allegations in Paragraph 85.

86      Defendant denies the allegations in Paragraph 86.  Defendant further states that Paragraph 86 purports to quote and characterize public statements, and Defendant refers to those public statements for their full contents, but denies any characterization thereof that is inconsistent with the public statements.

87      Defendant denies the allegations in Paragraph 87, except admits that, following the FCC's unprecedented and unforeseeable conduct with respect to the spectrum at issue, Boost Mobile could no longer operate as an MNO and was forced to transition to a hybrid MNO business model under which primary connectivity will be provided by wireless providers other than Defendant.

IV.    **DISH BASELESSLY ASSERTS A FORCE MAJEURE HAS OCCURED**

88      Defendant denies the allegations in Paragraph 88.

89      Defendant denies the allegations in Paragraph 89, including specifically footnote 17 thereto, except admits that (i) on September 24, 2025, Defendant sent a notice to Crown Castle under the MLA, attached to the Complaint as Exhibit C; and (ii) on September 25, 2025, Defendant sent a notice to Crown Castle under the MPA, attached to the Complaint as Exhibit D, and

Defendant refers to those notices for their full contents, but denies any characterization thereof that is inconsistent with those documents.

90     Defendant denies the allegations in Paragraph 90.

91     Defendant denies the allegations in Paragraph 91, except admits that Defendant sent notices to Plaintiffs in which Defendant confirmed that EchoStar was forced to sell certain spectrum licenses or face a wide-ranging license revocation by the FCC and that the AT&T and SpaceX Transactions were the result of unforeseeable actions by the FCC taken outside of Defendant's control ███████████████████████████ as defined in the MPA and MLA.

92     Defendant denies the allegations in Paragraph 92, except admits that EchoStar was forced to enter into the Transactions as a result of the unforeseen and unprecedented actions by the FCC requiring EchoStar to divest or forfeit the relevant licenses and authorizations related to EchoStar's spectrum.   Defendant further states that Paragraph 92 purports to quote and characterize public statement and articles, and Defendant refers to those documents for their full contents, but denies any characterization thereof that is inconsistent with those documents or with Defendant's responses in this Answer.

93     Defendant denies the allegations in Paragraph 93.  Plaintiffs purport to quote and characterize a public statement, and Defendant refers to that public statement for its full contents, but denies any characterization thereof that is inconsistent with such public statement.

94     Defendant denies the allegations in Paragraph 94.  Plaintiffs purport to quote and characterize public statements, and Defendant refers to those public statements for its full contents, but denies any characterization thereof that is inconsistent with such public statements.

95     Defendant denies the allegations in Paragraph 95.  Plaintiffs purport to quote and characterize public statements, and Defendant refers to those public statements for its full contents, but denies any characterization thereof that is inconsistent with such public statements.

96     Paragraph 96 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 96, except admits that on October 9, 2025, Defendant sent Crown Castle a letter, attached to the Complaint as Exhibit E.  Defendant further states that Plaintiffs purport to quote and characterize that letter, and Defendant refers to that document for its full contents, but denies any characterization thereof that is inconsistent with the document.

97     Defendant denies the allegations in Paragraph 97, except admits that Crown Castle sent Defendant two letters—one on October 24, 2025 under the MPA, attached to the Complaint as Exhibit F, and the other on November 14, 2025 under the MLA, attached to the Complaint as Exhibit G.  Defendant further states that Paragraph 97 purports to characterize those letters, and Defendant refers to those letters for their full contents, but denies any characterization that is inconsistent with those documents.

98     Defendant denies the allegations in Paragraph 98, except admits that Defendant sent Crown Castle a letter on November 10, 2025, attached to the Complaint as Exhibit H.  Defendant further states that Paragraph 98 purports to quote and characterize the November 10 letter, and Defendant refers to the November 10 letter for its full contents, but denies any characterization that is inconsistent with that document.

99     Admitted.

100    Paragraph 100 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 100.

101    Paragraph 101 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 101.

102    Defendant denies the allegations in Paragraph 102.

## FIRST CAUSE FOR RELIEF
**(Declaratory Judgment that a Force Majeure Has Not Occurred Under the MLA)**

103    Defendant incorporates by reference herein its responses to the preceding paragraphs of the Complaint.

104    Defendant admits the allegations in Paragraph 104 that on or about November ███, 2020 Defendant and the Crown Castle entities (except for Crown Castle Fiber LLC) entered into the MLA.

105    Defendant denies the allegations in Paragraph 105, except admits that Defendant and Crown Castle entities (except for Crown Castle Fiber LLC) entered into the MLA, and Defendant refers to the MLA for its full contents, but denies any characterization thereof that is inconsistent with that document.

106    Defendant denies the allegations in Paragraph 106, except admits that on September 24, 2025, Defendant sent Crown Castle (except for Crown Castle Fiber LLC) a notice under the MLA, and Defendant refers to the notice for its full contents, but denies any characterization thereof that is inconsistent with that document.

107    Defendant denies the allegations in Paragraph 107.

108    Defendant denies the allegations in Paragraph 108, except admits that Defendant and Crown Castle (except for Crown Castle Fiber LLC) entered into the MLA, and Defendant

refers to the MLA for its full contents, but denies any characterization thereof that is inconsistent with that document.

109    Defendant denies the allegations in Paragraph 109.

110    Paragraph 110 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 110.

111    Paragraph 111 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 111.

112    Paragraph 112 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 112.

## SECOND CAUSE FOR RELIEF
### (Declaratory Judgment that a Force Majeure Has Not Occurred Under the MPA)

113    Defendant incorporates by reference herein its responses to the preceding paragraphs of the Complaint.

114    Defendant admits that on or about December ▮, 2020 Defendant and Crown Castle Fiber LLC entered into the MPA.

115    Defendant denies the allegations in Paragraph 115, except admits that Defendant and Crown Castle Fiber LLC entered into the MPA, and Defendant refers to the MPA for its full contents, but denies any characterization thereof that is inconsistent with that document.

116    Defendant denies the allegations in Paragraph 116, except admits that on September 25, 2025, Defendant sent Crown Castle Fiber LLC a notice under the MPA, and Defendant refers to the notice for its full contents, but denies any characterization thereof that is inconsistent with that document.

117    Defendant denies the allegations in Paragraph 117.

118    Defendant denies the allegations in Paragraph 118, except admits that Defendant and Crown Castle Fiber LLC entered into the MPA, and Defendant refers to the MPA for its full contents, but denies any characterization thereof that is inconsistent with that document.

119    Defendant denies the allegations in Paragraph 119.

120    Paragraph 120 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 120.

121    Paragraph 121 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 121.

122    Paragraph 122 contains legal arguments or conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 122.

## PRAYER FOR RELIEF

No response is required to Plaintiffs' prayer for relief.  To the extent a response is required, Defendant denies that Plaintiffs are entitled to any relief.

## GENERAL DENIALS

Except as otherwise expressly admitted in Paragraphs 1 through 122, Defendant denies each and every allegation contained in Paragraphs 1 through 122 of the Complaint, including, without limitation, the headings, subheadings, subparts, and footnotes contained therein, and specifically denies liability to Plaintiffs, or that Plaintiffs suffered any legally cognizable damages for which Defendant is responsible.  Defendant expressly reserves the right to amend and/or supplement its Answer.

With respect to the Paragraphs in the Complaint in which Plaintiffs pray for damages or other relief, Defendant denies that Plaintiffs are so entitled under the law.

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative and other defenses.  In asserting these defenses, Defendant does not assume the burden with respect to any issue as to which applicable law places the burden on Plaintiffs.  Defendant reserves the right to supplement, amend, or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.  The Agreements do not require Defendant to continue making payments once the tower space and fiber transport services have become unusable as a direct result of the FCC's unprecedented and unforeseeable regulatory actions, which were unrelated to any of EchoStar's or Defendant's obligations to the FCC and which compelled the involuntary sale and loss of the necessary spectrum licenses essential to Defendant's wireless network operations.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the FCC's actions and the resulting forced sale and loss of the relevant spectrum licenses made it impossible and/or commercially impracticable for Defendant to perform its obligations under the Agreements.  The forced sale and loss of those licenses resulted from unforeseeable and unprecedented governmental action outside Defendant's control and unrelated to any of EchoStar's or Defendant's obligations to the FCC, and not due to any act or omission by Defendant.  Accordingly, Defendant's performance is excused under the doctrines of impossibility and/or impracticability.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the unforeseeable and unprecedented actions of the FCC, and the resulting forced sale of spectrum licenses. ███████ ████████████████████████████████ These government actions were unforeseeable and unprecedented, beyond Defendant's control, and unrelated to any of EchoStar's or Defendant's obligations to the FCC.  The FCC's actions directly prevented performance under the Agreements, and Defendant provided timely notice of the force majeure event.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the principal purpose of the Agreements—enabling DISH to operate a nationwide wireless network using specific spectrum licenses—has been frustrated by the FCC's unprecedented and unforeseeable regulatory actions, which were unrelated to any of EchoStar's or Defendant's obligations to the FCC and which compelling the involuntary sale and loss of the spectrum licenses.  These government actions were unforeseeable, unprecedented and beyond Defendant's control, and the non-occurrence of these government actions was a basic assumption on which the Agreements were made, thereby excusing or discharging Defendant's obligations under the Agreements, in whole or in part.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the consideration for the Agreements—access to tower space and fiber transport services for the operation of a wireless network using specific spectrum licenses—has failed as a direct and unforeseeable results of the FCC's unforeseeable and unprecedented actions, which were unrelated to any of EchoStar's or

Defendant's obligations to the FCC, and the resulting involuntary sale and loss of those licenses. As such, any obligation to continue performance under the Agreements are discharged.

<u>**SIXTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs seek to enforce the Agreements in a manner that would require Defendant to pay for services it cannot use due to the involuntary sale of spectrum licenses through no fault of its own, and because Defendant is not a party to the Transactions, does not own and never owned the spectrum licenses at issue, and is not entitled to receive any of the spectrum sale proceeds at closing.  Under the extraordinary circumstances created by the FCC's actions and the compelled sale and loss of the spectrum licenses, such enforcement would be inequitable and contrary to the parties' reasonable expectations.

<u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs did not take reasonable steps to prevent, reduce and/or mitigate any damage, harm or injury.

<u>**EIGHTH AFFIRMATIVE DEFENSE**</u>

Plaintiffs' claims are barred or subject to setoff and/or recoupment to the extent Defendant is entitled to credits, offsets, or other remedies under the Agreements, including but not limited to installation credits, service outage credits, rent abatements, or other amounts due to Defendant under the Agreements.

<u>**NINTH AFFIRMATIVE DEFENSE**</u>

Plaintiff's claims for certain categories of damages are barred or limited by the limitation of liability provisions in the Agreements.

WHEREFORE, Defendant respectfully requests that the Court enter judgment:

A.      In favor of Defendant and against Plaintiffs;

B.      Denying all claims for relief asserted by Plaintiffs;

C.      Awarding Defendant costs, including attorneys' fees; and

D.      Granting such other and further relief as the Court may deem just and proper.


Dated:   January 9, 2026                        Respectfully submitted,
         Denver, Colorado


*/s/ Jacob A. Rey*
**Hugh Q. Gottschalk**                          **WHITE & CASE LLP**
**Jacob A. Rey**                                Glenn M. Kurtz
Wheeler Trigg O'Donnell LLP                     Joshua D. Weedman
370 17th Street, Suite 4500                     Robert E. Tiedemann
Denver, CO 80202                                Camille M. Shepherd
(303) 244-1858                                  1221 Avenue of the Americas
(303) 244-1877                                  New York, N.Y. 10020-1095
gottschalk@wtotrial.com                         (212) 819-8200
rey@wtotrial.com                                gkurtz@whitecase.com
                                                jweedman@whitecase.com
*Attorneys for Defendant DISH Wireless*         rtiedemann@whitecase.com
*L.L.C.*                                        camille.shepherd@whitecase.com

                                                *Counsel to Defendant DISH Wireless*
                                                *L.L.C.*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on January 9, 2026, a true and correct copy of the foregoing document was e-filed and served through the CM/ECF system which will service notice on all counsel of record in this case.

*/s/ Jacob A. Rey*