UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:25-cv-03756-NYW-CYC

Aircomm of Avon, LLC; Atlantic Coast Communications LLC; CCATT LLC; CCTMO
LLC; CCTM1 LLC; CCTM2 LLC; Coverage Plus Antenna Systems LLC; Crown
Atlantic Company LLC; Crown Castle Fiber LLC; Crown Castle GT Company LLC;
Crown Castle MU LLC; Crown Castle South LLC; Crown Castle Towers 05 LLC;
Crown Castle Towers 06-2 LLC; Crown Castle Towers 09 LLC; Crown Castle USA
Inc.; Crown Communications LLC; Global Signal Acquisitions LLC; Global Signal
Acquisitions II LLC; Global Signal Acquisitions III LLC; Global Signal Acquisitions IV
LLC; GoldenState Towers, LLC; High Point Management Co. LLC; ICB Towers, LLC;
Interstate Tower Communications LLC; IntraCoastal City Towers LLC; Pinnacle
Towers Acquisition LLC; Pinnacle Towers Asset Holding LLC; Pinnacle Towers LLC;
Pinnacle Towers III LLC; Radio Station WGLD LLC; Shaffer & Associates, Inc.; Sierra
Towers, Inc.; Tower Development Corporation; Tower Systems LLC; Tower
Technology Company of Jacksonville LLC; Tower Ventures III, LLC; WCP Wireless
Lease Subsidiary, LLC; and TVHT, LLC,

        Plaintiffs,

v.

DISH Wireless L.L.C.; DISH Purchasing Corporation; and EchoStar Corporation,

        Defendants.

---

**DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING DECISION BY THE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

**CERTIFICATE OF CONFERRAL**

Pursuant to the Honorable Nina Y. Wang Uniform Civil Practice Standard 7.1B(b), counsel for Defendants conferred with counsel for Plaintiffs regarding the requested relief to assess whether the parties could agree to a stay of this action pending resolution of Defendants' Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407. Counsel for Plaintiffs ("Crown Castle") indicated that they oppose the motion.

**AI CERTIFICATION**

Pursuant to the Court's Standing Order Regarding the Use of Generative Artificial Intelligence in Court Filings, undersigned counsel certifies that generative artificial intelligence was not used to draft this filing

Defendants DISH Wireless L.L.C. ("DISH Wireless"), DISH Purchasing Corporation ("DISH Purchasing"), and EchoStar Corporation ("EchoStar" and together with DISH Wireless and DISH Purchasing, "Defendants"), by and through their undersigned counsel, hereby respectfully move the Court to stay all proceedings in the above-captioned action pending resolution of Defendants' Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 (the "MDL Motion"), filed with the Judicial Panel on Multidistrict Litigation (the "JPML" or "Panel") on March 2, 2026.  *See* Exhibit A, MDL Case No. 3182, ECF No. 3.

## INTRODUCTION

Beginning in 2019, DISH Wireless (and certain of its affiliates) began working to deploy a nationwide, first-of-its-kind cloud-native Open Radio Access Network-based 5G network.  First Amended Complaint (the "FAC") ¶¶ 1, 54, ECF No. 39.  That network relied on a portfolio of spectrum licenses and related assets that EchoStar, and certain of its affiliates (not including DISH Wireless) (collectively, the "EchoStar Group"), had acquired over a ten-year period, at a cost of over $30 billion, and to which EchoStar Group permitted DISH Wireless access.  *Id.* ¶ 58.  In order to facilitate the 5G network buildout and operation, DISH Wireless entered into numerous contracts with owners and operators of communications towers throughout the nation, as well as providers of network equipment or services, to secure access to the tower and network infrastructure necessary to operationalize the spectrum for subscribers to its Boost Mobile brand.  As part of that initiative, in November 2020 DISH Wireless and Crown Castle (except for Crown Castle Fiber LLC and Crown Castle USA Inc.) entered into the Master Lease

Agreement, (*id.* ¶ 126); in December 2020, DISH Wireless and Crown Castle Fiber LLC entered into the Master Product Agreement, (*id.* ¶ 71); and in May 2020, DISH Purchasing and Crown Castle USA Inc. entered into the Deployment Services Agreement (the "DSA") *(id.* ¶ 161).

By 2025, EchoStar Group had timely satisfied all applicable commitments to the Federal Communications Commission (the "FCC") relating to the relevant spectrum licenses. *Id.* ¶¶ 78, 93. But on May 9, 2025, the Chairman of the FCC sent a letter to EchoStar stating, among other things, that the FCC had initiated a review of EchoStar's licenses to provide 5G service in the United States and threatened the "loss of spectrum licenses and significant financial payments." *Id.* ¶ 79 n.11. The FCC's actions were unprecedented and unforeseeable and ultimately required EchoStar Group to sell the relevant spectrum licenses, or have the licenses revoked. *Id.* ¶ 79. There has never been another instance where the FCC directed a similar license holder to either sell or forfeit its spectrum licenses nationwide.

As a result of the FCC's unprecedented and unforeseeable actions, which were unrelated to any of EchoStar Group's or DISH Wireless's obligations to the FCC, EchoStar Group was required to sell certain of its spectrum licenses to SpaceX and AT&T (the "Required Sales Transactions"). *Id.* ¶¶ 83–85. The Required Sales Transactions make it impossible for DISH Wireless to continue to build, operate, or pay for a wireless network. *See* FAC, Exs. C, D; ECF Nos. 39-3, 39-4. The purpose of DISH Wireless's contracts with the Towers Providers was completely frustrated, and DISH Wireless's performance under the contracts themselves was rendered commercially impractical,

2

indeed impossible.  *See id.*  The FCC's actions, and the resulting Required Sales Transactions, were a force majeure event.

Against that backdrop, over the past four months, DISH Wireless has been sued by owners and operators of communications towers throughout the nation, as well as providers of network equipment or services, in over a dozen related federal and state lawsuits, including this action, each based on substantially similar allegations and claims, namely that DISH Wireless allegedly breached or defaulted on its obligations under various lease and service agreements by failing to make certain payments allegedly owed under those contracts, notwithstanding the fact that DISH Wireless no longer has access to the spectrum licenses that were being carried on the towers.

On March 2, 2026, Defendants filed the MDL Motion requesting that the Panel transfer this action, as well as six other related actions that are pending in federal district courts around the country,[1] to the District of Colorado for coordinated proceedings before this Court or, in the alternative, before the Honorable S. Kato Crews, who presides over *American Towers*.[2]  *See* MDL Case No. 3182, ECF No. 3.  Defendants are likely to prevail

---

[1] *See American Towers LLC, et al. v. DISH Wireless LLC*, Case No. 1:25-cv-03311 (D. Colo. Oct. 20, 2025) ("*American Towers*"); *DataVerge LLC v. DISH Wireless LLC*, Case No. 26-cv-1168 (E.D.N.Y. Feb. 27, 2026) ("*DataVerge*"); *Seidner Properties LP v. DISH Wireless LLC*, Case No. 8:26-cv-00082 (C.D. Ca. Jan. 9, 2026) ("*Seidner*"); *Royal Group Plaza, LLC v. DISH Wireless LLC*, Case No. 2:26-cv-01092 (C.D. Cal. Feb. 3, 2026) ("*Royal Group*"); *Sabre Industries, Inc. v. DISH Wireless Leasing LLC*, Case No. 1:26-cv-00209 (S.D.N.Y. Jan. 12, 2026) ("*Sabre*"); and *SBA Telecommunications, LLC, et al. v. DISH Wireless LLC*, Case No. 1:26-cv-00218 (W.D.N.Y. Feb. 5, 2026) ("*SBA*").

[2] Since Defendants moved the Panel for transfer and consolidation on March 2, 2026, DISH Wireless and EchoStar have been served with an additional complaint filed in the District of Colorado, which will also be subject to the request for consolidation.  *See Comcast Business Communications, LLC v. DISH Wireless LLC*, Case No. 1:26-cv-00824 (D. Colo. Feb. 27, 2026) (Varholak, M.J.).

on the MDL Motion because all seven related actions rest on the same fundamental factual questions, such as: Did the FCC require EchoStar to divest its spectrum assets? Were the Required Sales Transactions "voluntary" business decisions, or were they required by the government?  Was EchoStar's potential loss of its spectrum licenses contemplated or foreseeable to DISH Wireless when it entered its contracts with the Towers Providers?  And, ultimately, did the FCC's actions, and the resulting Required Sales Transactions make it impossible for DISH Wireless to build, operate, or pay for a 5G wireless network?  *See* Exhibit A, ECF No. 3-1, at 2-3.  The District of Colorado is also the most likely venue for the consolidated proceedings because it is, among other considerations, the location of all defendants, the majority of the alleged conduct, and the most related actions (three federal cases and four state actions).  *Id.* at 3.

For the reasons set forth below, this case should be stayed pending a determination by the Panel on the MDL Motion.  Staying this case pending the Panel's decision on the MDL Motion will preserve the Court's and parties' resources by ensuring that the parties conduct discovery just once, after all cases have been consolidated before this Court or another court.

Since Defendants filed the MDL Motion on March 2, 2026, courts in two of the related actions have already issued stays of all proceedings pending the Panel's decision, upon request of the parties.  *See Seidner*, ECF No. 23, *Order Granting Joint Stipulation for Stay of Proceedings*; *Dataverge*, ECF No. 10, *Order Granting Joint Stipulation Regarding Stay of All Proceedings*.

4

**PROCEDURAL BACKGROUND**

This case is in its nascent stages. The operative complaint was just filed on January 30, 2026, *see* ECF No. 39, and Defendants responded to the FAC on March 6, 2026. EchoStar filed a Motion to Dismiss, *see* ECF No. 71, and DISH Wireless and DISH Purchasing filed an Answer denying all allegations and pleading ten affirmative defenses. *See* ECF No. 70.

On February 17, 2026, Plaintiffs served their First Set of Requests for Production to DISH Wireless, and on February 27, 2027, Plaintiffs also served: (i) Plaintiffs' First Requests for Production to DISH Purchasing; (ii) Plaintiffs' First Requests for Production to EchoStar; (iii) Plaintiffs' First Interrogatories to DISH Wireless; (iv) Plaintiffs' First Interrogatories to DISH Purchasing; and (v) Plaintiffs' First Interrogatories to EchoStar. Neither party has noticed a deposition, and the parties are still over seven months away from the discovery cutoff. *See* Scheduling Order at 11, ECF No. 60.

**ARGUMENT**

As a general matter, "courts frequently grant stays pending a decision by the [Panel] regarding whether to transfer a case." *Bunnell Bunnell v. Future Motion, Inc.*, No. 22-cv-01220, 2023 WL 7279354, at *1 (D. Colo. Nov. 3, 2023) ("[T]he Court has been unable to find … a single case from within the District of Colorado denying a stay where a motion to transfer proceedings is pending before the JPML. Rather, stays are routinely granted under the same or similar circumstances."). Courts regularly exercise their "broad discretion" to "control [their] own docket" in these circumstances because the "interests of judicial economy are best served by granting a stay pending [a] MDL Panel's decision." *Cheney v. Eli Lily & Co.*, No. 14-cv-02249, 2014 WL 7010656, at *1 (D. Colo.

5

Dec. 9, 2014); *Lundy v. C.B. Fleet Co., Inc.*, No. 09-cv-00802, 2009 WL 1965521, at *1 (D. Colo. July 6, 2009).

In determining whether to grant a stay of all proceedings pending the Panel's decision on transfer and consolidation, courts in this district consider: "(1) the interest of the plaintiff in proceeding expeditiously with discovery and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the Court of staying discovery; (4) the interests of non-parties in either staying or proceeding with discovery; and (5) the public interest in either staying or proceeding with discovery." *Sykes v. LivaNova Deutschland GmbH*, No. 17-cv-02437, 2018 WL 286791, at *1 (D. Colo. Jan. 4, 2018) (citing *String Cheese Incident v. Stylus Shows, Inc.*, No. 1:02-CV-01934, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)). Each of these factors weighs in favor of a stay of this action.

## A. A Temporary Stay Of Proceedings Will Not Prejudice Plaintiffs

A temporary stay of this action will not cause any particularized or specific prejudice to Plaintiffs or their ability to conduct discovery. Plaintiffs cannot identify "a specific prejudice they would likely incur with respect to the merits of their cases based simply on a delay of deadlines." *Bunnell Bunnell*, 2023 WL 7279354, at *2; *Masciotra v. Vertafore, Inc.*, No. 20-cv-03603, 2021 WL 3887949, at *2 (D. Colo. Feb. 3, 2021) (Wang, M.J.) (rejecting plaintiffs' "vague" prejudice claim because "they have provided no specific examples of how their ability to conduct discovery might be adversely affected by a stay"); *Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081, 2010 WL 148278, at *1 (D. Colo. Jan. 7, 2010) (same). Notably, a postponement of deadlines or a delayed decision on a substantive motion are insufficient to outweigh the prejudice to a defendant from

6

defending multiple litigations pending the Panel's decision on consolidation.  *See Bunnell*

*Bunnell*, 2023 WL 7279354, at *2-3 (finding no prejudice to plaintiff where stay would

require postponing close of discovery, expert deadlines, and summary judgment); *Council*

*v. Target Corp.*, No. 13-cv-03479, 2014 WL 859326, at *2 (D. Colo. Mar. 5, 2014)

(rejecting argument that ruling on motion or expedited discovery are necessary to prevent

prejudice to plaintiffs).  This action is in the initial stages of discovery.  Defendants'

responses to Plaintiffs' first discovery requests, which they propounded less than a month

ago, are not yet even due.  Likewise, EchoStar's Motion to Dismiss the FAC will not be

fully briefed for almost a month, as EchoStar filed the Motion just two weeks ago.  For

their part, Plaintiffs have no pending motions before the Court.  And this action is based

on events that took place less than one year ago; Defendants have instituted the

appropriate litigation holds and the information Plaintiffs seek in discovery will be no less

available to them in the few months necessary for the Panel to rule on the pending MDL

Motion and consolidate the cases in an MDL proceeding.  *See Stone*, 2010 WL 148278,

at *1 (no prejudice where plaintiff argued "with the passage of time, the memories of the

parties and other witness may fade, witnesses may relocate or become unavailable, or

documents may become lost or inadvertently destroyed").

Additionally, Defendants have moved to transfer and consolidate the related

actions in Plaintiffs' own chosen forum, the District of Colorado.  Thus, a temporary stay

and grant of Defendants' MDL Motion will likely conclude with the consolidated litigation

proceeding in this Court.

**B.    Denial Of Proposed Stay Will Increase The Possibility Of Inconsistent Rulings And Impose Discovery Burdens On Defendants**

Defendants will face significant hardship if the proposed stay is not granted. As noted, this case, like the other six federal actions subject to the pending motion to transfer and consolidate, is premised on substantially similar allegations and claims, namely that DISH Wireless has allegedly breached or defaulted on its obligations under various lease and service agreements by failing to make certain payments allegedly owed under those contracts, notwithstanding the fact that DISH Wireless no longer has access to the spectrum licenses that were being carried on the towers. Denial of the proposed stay will create a significant risk of inconsistent pretrial rulings and likely result in substantial duplication of effort and a waste of resources.[3]

*Masciotra v. Vertafore*, *Inc.* is instructive. There, this Court granted a defendant's motion to stay pending resolution of a motion to transfer because the typical burdens of discovery would be "compounded by subjecting Defendant[s] to multiple suits in various judicial districts, which increases the possibility of increasingly inconsistent rulings and discovery obligations." 2021 WL 3887949, at *2. Rejecting plaintiffs' claims to the contrary, this Court noted that its "experience suggests that coordinating discovery efforts between multiple jurisdictions adds complexity even to routine matters." *Id.  See also*

---

[3] Though Defendants have moved the Panel to transfer the consolidated proceedings to the District of Colorado and before this Court, continuing pretrial proceedings in this action risks inconsistent pretrial rulings and duplicated efforts if the cases are transferred to another court. *See Musticchi v. Wright Med. Tech., Inc.*, No. 4:19-cv-00607, 2020 WL 13111224, at *1 (E.D. Ark. July 2, 2020) (stay granted by proposed transferee court to postpone "significant time and effort on pretrial matters over the next several months, efforts that would be potentially wasted if the MDL Motion is granted and the cases are transferred to another court").

*Fontenot v. NCAA*, No. 1:23-cv-03076, 2024 WL 6990724, at *1 (D. Colo. Feb. 21, 2024) ("Staying [proceedings] will promote the interests of judicial economy, efficiency, and consistency between courts … any potential prejudice to Plaintiffs caused by the stay is outweighed by the risk of inconsistent judgments and the interest of judicial economy.").

Here, Defendants will suffer prejudice if required to respond to Plaintiffs' voluminous discovery requests (which include interrogatories and requests for production to each of the three Defendants) while the MDL Motion is pending.  The topics of Plaintiffs' requests are expansive and likely to be duplicated by plaintiffs in the six other actions pending transfer and consolidation.  *See, e.g.*, Exhibit B, *Plaintiffs' First Set of Requests for Production to DISH Wireless LLC*, No. 2 ("All Documents and Communications Concerning the actual or contemplated assertion of force majeure, frustration of impossibility, or other similar doctrines with respect to any of DISH's Infrastructure Providers, including Crown Castle.").  Compliance with Plaintiffs' discovery requests will be a significant burden that Defendants will likely be required to duplicate in a consolidated litigation if the Panel grants their MDL Motion.  *See Stone*, 2010 WL 148278, at *2 (complying with plaintiffs' "significant" discovery requests "would impose on Defendants more than the ordinary burdens of litigation"); *Bunnell Bunnell*, 2023 WL 7279354, at *2 (finding prejudice to defendant where it would "incur the burden and expense of discovery which would be duplicative of discovery once an MDL is created" and risk "inconsistent or contradictory decisions during the course of discovery"); *Lundy*, 2009 WL 1965521, at *1 (granting stay to, *inter alia*, "avoid duplicative discovery efforts").

9

### C.    A Stay Will Preserve Judicial Resources

A stay will conserve judicial resources and convenience the Court.  A stay will further judicial economy and efficiency because if the Panel grants the MDL Motion, then this proceeding and the six other related actions likely will be consolidated before this Court or another court in the District of Colorado.[4]  Two other district courts have already granted stays of related actions pending consolidation.  *See Seidner*, ECF No. 23, *Order Granting Joint Stipulation for Stay of Proceedings*; *DataVerge*, ECF No. 10, *Order Granting Joint Stipulation Regarding Stay of All Proceedings.*  If this action were not stayed, this Court would be required to preside over similar discovery efforts twice—once while the MDL Motion is pending, and then again once all other parties and cases have been consolidated into the MDL.  It would be much more efficient to conduct discovery on a uniform schedule, once all cases have been consolidated before this Court.  *See Lundy*, 2009 WL 1965521, at *1 (holding that stay pending the Panel's decision will allow the court to avoid "duplicative discovery efforts, unnecessary expenditures of judicial resources and the parties, and [to] maximize judicial economy among the courts."); *see also Masciotra*, 2021 WL 3887949, at *3 (granting stay to avoid the risk of "inconsistent pretrial determinations – such as discovery limitations, scheduling, and the resolution of

---

[4] Notably, a Colorado state court recently ordered consolidation of two related state cases that also arise out of the exact same transactions based on, *inter alia*, their factual similarities.  *See* Exhibit C, *Zayo Group, LLC et al. v. DISH Wireless L.L.C*, 2025CV034300, Feb. 11, 2026 Order Granting Motion to Consolidate (Colo. Dist. Ct., 2d Jud. Dist.) ("In both this action and the related Diamond Action, DISH [Wireless] is relying on the same underlying facts in an attempt to terminate its contractual obligations with Zayo and the Diamond Entities under the doctrines of force majeure, impossibility and frustration of purpose. It is therefore in the interests of litigation efficiency and judicial economy for this action and the related Diamond Action to be consolidated.")

disputes"); *Deutsche Bank Tr. Co. Am. v. Fushimi*, No. 11-cv-02472, 2011 WL 5864987, at *3 (D. Colo. Nov. 22, 2011 ("[A]voiding the risk of inconsistent judgments and the interests of judicial economy will ordinarily outweigh any slight delay caused by a stay pending an MDL panel's ruling."); *F.D.I.C. v. Countrywide Fin. Corp.*, No. 11-cv-02268, 2011 WL 4372915, at *3 (D. Colo. Sept. 19, 2011) ("Judicial resources would best be conserved by imposing a stay until the transfer issue is resolved so that, if the transfer is finalized, the JPML court can determine all pretrial matters in a coordinated manner.").

### D.     The Interests Of Non-parties And The Public Support A Stay

A stay will also serve the interests of a relevant non-party to this litigation and the public.  As discussed above, *supra* at pp. 3-4, the issues in this proceeding and the six related federal actions pending consolidation are related to the FCC's unprecedented and unforeseeable actions which made it impossible for DISH Wireless to perform its obligations under various lease and service agreements.  Several of Plaintiffs' discovery requests relate to Defendants' communications with the FCC, and Defendants may seek third-party discovery from the FCC to prove its affirmative defenses, both in this litigation and the six related actions.  The FCC has an interest in participating in third-party discovery in one consolidated litigation, rather than duplicating efforts across, at minimum, seven federal actions.  *See Ratcliff v. Brown*, No. 23-cv-00605, 2023 WL 6314566, at *5 (D. Colo. Sept. 28, 2023) (granting stay where non-parties' witnesses may otherwise "have been burdened with discovery unnecessarily").

Further, the public has an interest in "avoiding wasteful efforts by the Court" and the "efficient and just resolution" of this litigation.  *F.D.I.C.*, 2011 WL 4372915, at *3 (finding the public interest weighs in favor of staying case); *see also Ratcliff*, 2023 WL

11

6314566, at *5 (granting stay where continued litigation might "unnecessarily tap[]" public funds "in connection with the expenditure of judicial resources" and "participation by non-party witnesses employed by public entities").  A stay of this action pending the Panel's resolution of the MDL Motion serves those interests.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for an order that temporarily stays these proceedings pending the Panel's determination as to whether to consolidate and transfer this action pursuant to 28 U.S.C. § 1407.

Dated:  March 16, 2026.                        Respectfully submitted,


*/s/ Glenn M. Kurtz*
Hugh Q. Gottschalk
Jacob A. Rey
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile:  303.244.1879
Email:  gottschalk@wtotrial.com
          rey@wtotrial.com

Glenn M. Kurtz
Joshua D. Weedman
Robert E. Tiedemann
Camille M. Shepherd
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: 212.819.8200
Email: gkurtz@whitecase.com
          jweedman@whitecase.com
          rtiedemann@whitecase.com
          camille.shepherd@whitecase.com

Attorneys for Defendant DISH Wireless
L.L.C.; DISH Purchasing Corporation; and
EchoStar Corporation

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on March 16, 2026, I electronically filed the foregoing Defendants' Motion to Stay Proceedings Pending Decision by the Judicial Panel on Multidistrict Litigation with the Clerk of Court using the CM/ECF system which will serve notice on all counsel of record in this case.

*/s/ Glenn M. Kurtz*